**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JEFFREY MARANO, | |
| Plaintiff, | Civil Action No. 20-10804 (FLW) |
| v. | |
| ANDREW SAUL, Commissioner of Social Security, | **OPINION** |
| Defendant. | |

**WOLFSON, Chief Judge:**

Jeffrey Marano ("Plaintiff") appeals from the final decision of the Commissioner of Social Security, Andrew Saul ("Defendant"), denying Plaintiff's application for disability benefits under Title II of the Social Security Act (the "Act").  After reviewing the Administrative Record ("A.R."), the Court finds that the Administrative Law Judge's ("ALJ") decision was based on substantial evidence, and accordingly, the ALJ's decision is **AFFIRMED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, born on July 22, 1979, was 35 years old on June 1, 2015, his alleged disability date, qualifying him as a "younger person" as defined in the Code of Federal Regulations ("CFR").  (A.R. 14, 21; *see* 20 C.F.R. §§ 404.1563(c), 416.963(c)).  Plaintiff has at least a high school education, and has previously worked as deli cutter/slicer and cashier.  (*Id.*)

On August 1, 2017, Plaintiff filed a Title II application for a period of disability and disability insurance, alleging disability as of June 1, 2015, due to anxiety, bipolar disorder, attention deficit disorder (ADD), and attention deficit hyperactivity disorder (ADHD).  (A.R. 12,

63-64.)  The application was denied initially on January 9, 2018, and upon reconsideration on April

19, 2018.  (A.R. 12.)   Plaintiff then filed a written request for a hearing, which was held on

September 17, 2019, before an ALJ.   (A.R. 12, 28-62.)   On October 9, 2019, the ALJ found

Plaintiff was not disabled under the relevant statutes.  (A.R. 12-22.)  Plaintiff requested review of

the ALJ's decision by the Appeals Council, which the Appeals Council denied on June 26, 2020,

after finding no reason under the rules to review the ALJ's decision.  (A.R. 1-3.)  Plaintiff then

commenced the present appeal, requesting review of the ALJ's decision under 42 U.S.C. § 405(g)

and § 1383(c)(3).  ECF No. 1.

### A.  Review of Medical Evidence

#### i.    Medical Records

Plaintiff was treated at Community Health Associates from December 2013 to January

2016, where he was prescribed Zoloft and Xanax for his anxiety, depression, and ADHD.  (A.R.

312-339.)  Community Health's records note that Plaintiff has been diagnosed with ADHD since

childhood.  (A.R. 319.)  Plaintiff also has been treated by Dr. Felix Geller at Stress Care of New

Jersey since 2015.   (A.R. 340-365.)   During that time, Dr. Geller stated Plaintiff had been

prescribed Xanax, Zoloft, Neurontin, Effexor, and Ambien.  (A.R. 342.)  The medical records

indicate varying increases, (A.R. 343, 346, 355), and decreases, (A.R. 340, 343, 352, 355), in

Plaintiff's anxiety and depression levels throughout his time receiving care from Dr. Geller.

In April 2018, Plaintiff visited Howell Primary Care complaining of severe lower back

pain, including sharp, burning, tingling, and aching pain, as well as stiffness.  (A.R. 418.)  Plaintiff

stated this pain caused him to have difficulty with walking.  (A.R. 420.)  Dr. Neil al prescribed

Plaintiff 12 sessions of physical therapy.  (A.R. 420-421.)  In connection with his back issues,

Plaintiff went to University Radiology, where he was given a variety of MR imaging pulse

sequences performed in the sagittal and axial planes to evaluate his lumbar spine. (A.R. 429.) Dr. Gregg Slater's impression was that Plaintiff had multilevel Schmorl's nodes, most prominent in the anterior superior L3 vertebral body, without evidence of acute compression fracture, as well as mild lumbar spondylosis. (*Id.*)

### ii. Medical Opinion Evidence

At both the initial review and on reconsideration of Plaintiff's applications, state medical consultants Drs. Helen Feldman and Fred Eisner determined, based on their assessment of the medical evidence, that Plaintiff would have moderate limitations in maintaining attention and concentration for long periods of time, performing activities within a schedule, maintaining regular attendance and being punctual, and working in coordination with or close proximity to others. (A.R. 63-88, 91-118.)   In addition, Plaintiff also would have moderate limitations in accepting instructions, responding appropriately to criticism, and interacting with coworkers or peers without distracting them. (*Id.*)  Both reviewers found Plaintiff "Not Disabled." (*Id.*)

On December 8, 2017, Plaintiff's primary care physicians at Howell Primary Care completed a report for the New Jersey Division of Disability Determination Services in connection with Plaintiff's claim. (A.R. 366-69.)  The report noted that Plaintiff has difficulty driving and being in public due to frequent severe panic attacks. (A.R. 367.)  The report noted that Plaintiff had been diagnosed with anxiety and panic disorder. (*Id.*)

Dr. Zulifiqar Rajput of Brick Psychiatric Services performed a consultative psychiatric exam on December 21, 2017. (A.R. 371-374.)  Dr. Rajput's mental examination revealed that Plaintiff's mood and affect were anxious. (A.R. 373.)  Plaintiff denied delusions, paranoia, hallucinations or suicidal thoughts. (*Id.*)  His motor activity was normal. (*Id.*)  Plaintiff refused to do the serial sevens test or answer concentration questions. (*Id.*)  Dr. Rajput's diagnostic

impression was that Plaintiff had generalized anxiety disorder with panic attacks, major depressive disorder, and chronic panic. (*Id*.) Dr. Rajput opined that Plaintiff's long-term prognosis could improve with medication and psychotherapy, and that Plaintiff needed, on a regular basis, to see a psychiatrist and therapist. (A.R. 374.) Dr. Rajput also ruled that Plaintiff was capable of taking care of his own finances. (*Id*.)

On May 23, 2018, Dr. Felix Geller, Plaintiff's treating psychiatrist, offered a medical opinion on Plaintiff's functional abilities as it pertains to work. (A.R. 437.) Dr. Geller stated he had diagnosed Plaintiff with social phobia, major depressive disorder, and generalized anxiety disorder, (*Id*.), and further, noted that Plaintiff has severe anxiety, which can prevent him from doing daily functions, such as leaving his home. (A.R. 438.) But, Dr. Geller stated that as to Plaintiff's prognosis, Plaintiff should be able to function a year from the time of the exam. (*Id*.) Dr. Geller noted that some of Plaintiff's other symptoms were difficulty thinking or concentrating, recurrent and intrusive recollections of his traumatic experiences, emotional withdrawal or isolation, persistent irrational fear of specific objects, activities, or situations, and severe panic attacks manifested by sudden unpredictable onset of intense apprehension, fear, terror, and impending sense of doom. (*Id*.) Regarding his work-related functional ability, Dr. Geller found Plaintiff's ability was either "very good" or "limited but satisfactory" in all categories, except for "maintain regular attendance and be punctual within customary, usually strict tolerances" and "deal with normal work stress," which Dr. Geller rated as "seriously limited and is not satisfactory," and as to the "complete a normal workday and workweek without interruptions from psychologically based symptoms," Dr. Geller rated this as "unable to meet competitive standards." (A.R. 439.) With regard to his functional limitations, Dr. Geller opined that Plaintiff had moderate limitations in understanding, remembering, or applying information, interacting with others, and

adapting or managing oneself.  (A.R. 440.)  Dr. Geller found that Plaintiff had a marked limitation as to concentration, persistence or pace.  (*Id*.)

## B.  Review of Testimonial Evidence

### i.   Plaintiff's Testimony

At his hearing, Plaintiff testified that he was 6'1", 205 pounds, and completed high school. (A.R. 35, 37.)    Plaintiff stated that he lived with his mother, brother, and sister.  (A.R. 35.) Regarding his day-to-day life, Plaintiff explained that he does not have a driver's license, and if he needs to travel, he either uses a service called "LogistiCare" or his mother drives him.  (A.R. 36.)  Plaintiff testified that he is afraid of taking public transportation or driving because of a prior car accident, which now causes him to have panic attacks inside cars.  (*Id*.)  Regarding his trip to the hearing, Plaintiff testified that a friend drove him an hour and twenty minutes to the hearing, but that he was in extreme pain the entire time due to shooting pains from his lower back down to his left leg.  (A.R. 37.)

As to his recent work history, Plaintiff stated that since his date of disability, *i.e.*, June 1, 2015, he worked a few jobs, but he could not maintain any of these jobs due to his anxiety and back pain.  (A.R. 38.)    Specifically, Plaintiff testified that he worked at Stop & Shop for approximately three months, where he worked in the deli in customer service and meat cutting. (A.R. 38-39.)    Plaintiff stated that he left that job, because he was having panic attacks due to the number of people around.  (A.R. 39.)  Plaintiff then discussed jobs he had at ShopRite and Boston Market doing similar deli work, and further explained he left those jobs after a few weeks or months, due to extreme lower back pain and panic attacks.  (A.R. 39-40.)  Plaintiff also noted that between 2004 and 2007, he had been a full-time deli clerk for Stop & Shop.  (A.R. 42-43.)

Plaintiff further testified as to his physical and mental limitations and medical history. Plaintiff complained of anxiety and panic attacks that, on average, happen once a day, several days a week, but on a bad day, can occur three or four times a day. (A.R. 43.) These panic attacks, which can last for a day or longer, cause him to have slurred speech, extremely sensitive hearing, and tunnel vision. (A.R. 43-44.) Plaintiff claimed that his panic attacks are particularly triggered by car rides, bright lights, and crowds of around 5 people. (*Id.*) In addition, Plaintiff testified that he has severe anxiety, which makes it difficult to think clearly or sleep. (A.R. 45.) Plaintiff stated that when he is stressed, he stutters and struggles to concentrate on a simple task. (A.R. 46.) Plaintiff explained that he takes medication for anxiety, and while it helps him focus and generally lowers his anxiety, it is not 100% effective. (A.R. 46-47.) Because of his anxiety, Plaintiff stated that he only sleeps one or two hours a night on average. (A.R. 45.) Plaintiff tried Ambien and Tramadol for sleep, but the side effects were too strong to continue taking them. (A.R. 45.) Plaintiff testified that he sees a therapist once a week for anxiety and PTSD, and is in a program called BHH, which helps him plan his doctor's appointments. (A.R. 47.) Plaintiff also stated that he has two friends, but is afraid to leave his house, often not leaving for several days at a time. (A.R. 49-50.) Plaintiff claimed that he tends to isolate himself in his bedroom during these stints, often feeling anxious about going to the bathroom or showering. (A.R. 50.)

Plaintiff testified he is capable of making microwave meals, but does not cook because of difficulty standing in front of a stove and reading directions on how to cook. (A.R. 54-55.) He cannot do household chores because of his back pain. (A.R. 55.) According to Plaintiff, his mental health issues prevent him completing tasks that require detailed instructions, or require him to lift, bend, or twist because of the pain. (*Id.*) Plaintiff also noted he has had to give up bowling and fishing due to pain. (A.R. 55.)

Plaintiff testified that due to his extreme lower back pain he cannot stand or sit for long periods of time. (A.R. 43.)  Occasionally the pain will travel up his back into his neck. (A.R. 50.) On a bad day, Plaintiff explained that his pain is a six or seven out of ten, but some days it is worse. (A.R. 51.)  Plaintiff testified that tying his shoes, standing up for long periods of time, walking long distances, climbing stairs, and sitting down for long periods all trigger pain in his back. (*Id.*) Plaintiff stated he begins to feel pain after fifteen to twenty minutes of sitting, after standing for a half hour or walking for up to a half mile, and after lying on his back for ten minutes. (A.R. 53-54.)  He takes Neurotonin, which is supposed to help with the pain. (A.R. 52.)  Plaintiff stated that he also has a medical marijuana card, but he cannot afford marijuana. (*Id.*)

### ii.    Vocational Expert's Testimony

The Vocational Expert, Louis Salatsy (the "VE"), began by classifying Plaintiff's past jobs according to the Dictionary of Occupational Titles ("DOT"). (A.R. 56.)  The VE classified Plaintiff's past work as a deli cutter-slicer under DOT code 316.684-014, which is an unskilled occupation, with a Specific Vocational Preparation ("SVP") of 2, which is light exertion. (*Id.*)

The ALJ proceeded to ask the VE the following hypothetical question:

[P]lease assume a hypothetical individual of Mr. Marano's age, education, and past relevant work experience who has the following residual functional capacity.  Light work, frequent climbing, balancing, stooping, kneeling, crouching, and crawling. Frequent exposure to hazards such as unprotected heights and moving machinery. Please further assume that the individual could perform unskilled work involving routine and repetitive tasks with low stress, which I will define as occasional changes in the work setting and occasional independent decision making.  Please also assume that the individual could perform work that involves no quota or production-paced work, but rather goal-oriented work.  Occasional interaction with coworkers and supervisors, but no interaction with members of the public.  All right, could the hypothetical individual perform Mr. Marano's past relevant work?

(A.R. 57.)  The VE responded that the only thing that would prohibit such work is interfacing with the public, and unless there was clarification on if he had to interface with the public, the

hypothetical person would be precluded.  (*Id*.)  The ALJ then asked if there were any jobs in the national economy available to this hypothetical individual.  (A.R. 58.)  The VE responded that such an individual could perform the work of a bagger, DOT 920.687-018, which is a light exertional occupation with an unskilled SVP of 1, and which is not classified as a production-based occupation.  (A.R. 58.)  The VE also stated that the hypothetical person could perform work as an assembler, DOT 739.687-194, which is light exertional occupation with an unskilled SVP of 1.  (*Id*.)  Assembler is classified as a production-oriented job, and therefore, the VE, based on his 30 years of experience in vocational placement, decreased the number of assembler jobs that would be available to Plaintiff by 50% to account for jobs that could be considered production-based. (*Id*.)  Finally, the VE stated that the hypothetical person could be a produce weigher, DOT 299.587-010, which is a light exertional occupation with an unskilled SVP of 1.  (A.R. 59.)  The VE then testified that an individual who is off-task for 10% or more of the workday, or who missed two days of work a month, would be precluded from competitive employment.  (A.R. 59-60.)

### C. The ALJ Decision

On October 9, 2019, the ALJ issued a written decision analyzing whether Plaintiff satisfied his burden to demonstrate disability using the standard five-step process.  (A.R. 12-22.)  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 1, 2015, Plaintiff's alleged onset date of disability.  (A.R. 14.)  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, bipolar disorder, generalized anxiety disorder, panic disorder, and alcohol dependence.  (A.R. 15.)  Although not a severe impairment, the ALJ also stated that Plaintiff had a medically determinable impairment in the form of hypertension.  (*Id*.)

At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments" in the relevant CFR. (*Id*.) In making this finding, the ALJ gave specific consideration to Listings 1.04, 12.04, and 12.06. (*Id*.) In finding that Plaintiff does not meet Listing 1.04, disorders of the spine, the ALJ explained that the record did not demonstrate compromise of a nerve root or the spinal cord, or any of the required additional spinal injury findings. (*Id*.) Further, the ALJ noted Plaintiff's range of motion was no more than mildly limited, he had 5/5 muscle strength in his legs, negative straight-leg raising, and normal gait. (*Id*.) The ALJ also determined the severity of Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listings 12.04 and 12.06." (*Id*.) In making this decision, the ALJ considered the "paragraph B" criteria, which are satisfied when the mental impairments result in at least one extreme or two marked limitations in a broad area of functioning. (*Id*.) In understanding, remembering, or applying information, the ALJ found Plaintiff had a moderate limitation. (A.R. 16.) The ALJ noted that although Plaintiff had difficulty with his memory and remembering instructions, Plaintiff is able to prepare frozen meals, which indicated an ability to understand and apply instructions. (*Id*.) Further, during a consultative evaluation, Plaintiff was able to recall three of three items immediately, and one of three items after five minutes, which was considered "fair" long-term memory. (*Id*.) In his record, Plaintiff consistently denied memory difficulty, and recent and remote memory were normal during mental status examinations. (*Id*.) In interacting with others, the ALJ determined that Plaintiff had a moderate limitation. (*Id*.) Plaintiff testified that he does not socialize with anyone, that he sometimes does not leave his house, and that even when he is in his own house, he will isolate himself. (*Id*.) The ALJ noted Plaintiff had difficulty being in groups of people and cannot take public transportation. (*Id*.) But, the ALJ explained that

Plaintiff has two friends, lives with his mother, brother, and sister, spends time texting with others, has no problems getting along with family and friends, and is able to get along with authority figures. (*Id*.) Plaintiff was also calm and cooperative during his consultative evaluation. (*Id*.) In concentrating, persisting, or maintaining pace, the ALJ found Plaintiff had a moderate limitation. (*Id*.) The ALJ noted that Plaintiff testified that he had trouble concentrating for more than 20 minutes and that his anxiety results in low energy. (*Id*.) During Plaintiff's consultative evaluation, Plaintiff refused to do the serial sevens test, and while he spelled TABLE forward, he refused to spell it backward. (*Id*.) Plaintiff also refused to answer concentration questions, and did not acknowledge that he knew the abstraction questions. (*Id*.) As to adapting or managing oneself, the ALJ determined Plaintiff had a moderate limitation. (*Id*.) Although Plaintiff does not drive and testified that being in cars can cause panic attacks, Plaintiff is able to receive rides from friends or use LogistiCare if he needs to go somewhere. (*Id*.) The ALJ also observed that while Plaintiff does not perform household chores due to back pain, he is able to independently prepare simple meals and perform personal care activities. (*Id*.) Further, the ALJ noted that Plaintiff is able to count change, handle his savings account, and use a checkbook or money order. (*Id*.) Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ found that the "paragraph B" criteria was not satisfied. (A.R. 16-17.) The ALJ then stated that he considered whether "paragraph C" criteria were satisfied, and determined that the evidence did not establish the presence of these criteria, because Plaintiff's medical record did not establish that the Plaintiff had only marginal adjustment, which is only a minimal capacity to adapt to environmental changes or demands not already part of his life. (A.R. 17.)

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "light work" as defined in the relevant CFR. (*Id*.) This included finding that "[Plaintiff]

can have frequent exposure to hazards such as unprotected heights and moving machinery. [Plaintiff] can perform unskilled work involving routine and repetitive tasks. [Plaintiff] can perform low stress work, defined as occasional changes in work setting and occasional independent decision-making.  [Plaintiff] can perform no quota or production-based work, but rather goal-oriented work.  [Plaintiff] can have occasional interaction with coworkers and supervisors, and no interaction with members of the public." (*Id*.)  In so finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (*Id*.)  After examining the medical record and live testimony, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but, the ALJ found Plaintiff's statements regarding intensity, persistence, and limiting effects of these symptoms to not be entirely consistent with the medical evidence and other evidence in the record.  (A.R. 18.) Regarding his physical impairments, the ALJ found that while Plaintiff complained of back pain and examinations showed mildly limited range of motion and pain in Plaintiff's back, Plaintiff also had normal range of motion in his extremities, no spinal tenderness, normal muscle strength in his legs, and normal sensation.  (*Id*.)  Plaintiff's lumbar did show signs of degenerative changes in diagnostic imaging, but Plaintiff was treated with medication and physical therapy.  (*Id*.)  Because of these degenerative changes, as well as physical examinations showing limited range of motion, pain, and spasms in his back, the ALJ limited Plaintiff to light exertional work with additional postural and environmental limitations.  (*Id*.)  As to Plaintiff's mental impairments, the ALJ noted that while Plaintiff has complained of anxiety, depression, and panic attacks, among other ailments, examinations revealed that Plaintiff was alert and oriented, calm and cooperative, exhibited appropriate effect, formed logical thoughts, and had normal memory and concentration.

(A.R. 19.)  Plaintiff also reported feeling better after taking medication.  (*Id.*)  In addition, Plaintiff was never hospitalized during the relevant period, and reported having less intense anxiety in 2016. (*Id.*)  Additionally, the ALJ did not find Plaintiff to be as limited as claimed by Plaintiff, because Plaintiff stated he babysat for relatives and was able to run up and down the stairs with them. (*Id.*) And even though Plaintiff reported isolating himself regularly, he has good relationships with siblings, relatives, and his parents.  (*Id.*)  For these reasons, the ALJ limited Plaintiff to unskilled and low stress work, with additional limitations in social interaction and ability to perform quota or production-based work.  (*Id.*)

The ALJ also considered medical opinions in making his decision.  First, regarding Plaintiff's mental limitations, the ALJ found the state agency consultants' opinions at the initial and reconsideration levels to be unpersuasive.  (*Id.*)  The ALJ determined that the record exhibited greater limitations for Plaintiff than those given by the consultants.  (A.R. 19-20.)  The ALJ explained that the consultants' finding that Plaintiff could sustain concentration, persistence, and pace, as well as adapt to work-like settings, was not supported by the medical evidence, which showed he required limitations to unskilled and low stress work, with additional social interaction and performance quota limitations.  (A.R. 20.)  Second, the ALJ found that the state agency consultants' opinion that Plaintiff did not have a severe physical impairment to be unpersuasive, because Plaintiff's record showed degenerative changes to his back, as well as a limited range of motion, pain, and back spasms.  (*Id.*)  For these reasons, the ALJ determined that these symptoms were consistent with a work limitation to a light exertional level with additional postural and environmental limitations.  (*Id.*)  Third, the ALJ found Dr. Geller's medical opinion to be unpersuasive, as well.  (*Id.*)  The ALJ stated that Dr. Geller's finding that Plaintiff had a marked limitation in concentration and persistence is not supported by Dr. Geller's "vague reference" to

panic attacks and anxiety. (*Id*.)  In addition, Dr. Geller's notes state that Plaintiff consistently denied anxiety, depression, memory difficulty, and speech difficult, in addition to generally cooperative behavior, appropriate affect, fair insight, and judgment. (*Id*.)  The ALJ found that the record was not consistent with the degree of limitation given by Dr. Geller as to Plaintiff's ability to concentrate and persist, adapt to changes in environment, or stay on task. (*Id*.)  Finally, the ALJ stated that he did not address evidence that was neither inherently valuable nor persuasive. (*Id*.)  The ALJ then determined that the demands of Plaintiff's past relevant work as a deli cutter/slicer exceeded his RFC, and for this reason, Plaintiff was unable to perform past relevant work as actually or generally performed.  (A.R. 21.)

At step five, the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy.  (*Id*.)  Specifically, and as the VE testified, Plaintiff could perform the job of bagger, assembler, with a decrease of the national job numbers available to Plaintiff by 50% to account for production-based jobs, and produce weigher.  (A.R. 22.)  Therefore, the ALJ concluded that Plaintiff did not have a disability as defined by the Social Security Act.  (*Id*.)

## II.   <u>STANDARD OF REVIEW</u>

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  While the court must examine

the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (internal quotations and citations omitted). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Id*. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id*. § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520.  First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id*. § 404.1520(a)(4)(i); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).  If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits.  *See Id*. § 404.1520(b); *see also Bowen*, 482 U.S. at 140.  Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities.  *Id*. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5.  Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs."  *Id*. § 404.1522(b).  These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  *Id*. § 404.1522(b)(1).  A claimant who does not have a severe impairment is not considered disabled.  *Id*. at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List").  *Id*. § 404.1520(a)(4)(iii).  If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits.  *See id*. § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5.  If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent.  *See id*. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment.  *Id*.  An impairment or combination of impairments is basically

equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar.  *Williams*, 970 F.2d at 1186.  If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the RFC to perform his or her past relevant work.  20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141.

If the claimant can perform past relevant work, the claimant is determined to not be disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42.  The claimant bears the burden of demonstrating an inability to return to the past relevant work.  *Plummer*, 186 F.3d at 428.  Finally, if it is determined that the claimant is no longer able to perform his or her past relevant work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy."  *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's RFC, age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant can perform work and not disabled.  *Id*.

## III.     <u>PLAINTIFF'S CLAIMS ON APPEAL</u>

Plaintiff maintains, first, that the ALJ failed to address Plaintiff's ADHD at step two, and in that connection, resulted in a failure to incorporate limitations associated with ADHD into Plaintiff's RFC determination.  (Pl. Br. at 13.)  Second, Plaintiff argues that the ALJ failed to properly consider medical opinion evidence, including mischaracterizing the state agency consultants' opinions, failing to consider the consultative examination of Dr. Rajput, and determining, incorrectly, that Dr. Geller's medical opinion was not persuasive.  (*Id*. at 17.)  Third, Plaintiff contends that the ALJ erred by ignoring the third-party statements of Plaintiff's former

co-worker.  (*Id*. at 21.)  Lastly, Plaintiff asserts that the ALJ erred in finding that Plaintiff was capable of performing work which should have been precluded by his RFC.  (*Id*. at 22.)

## A.  The ALJ Did Not Commit Reversible Error by Failing to Analyze Plaintiff's ADHD

Plaintiff argues that the ALJ failed to evaluate Plaintiff's diagnosis of ADHD at step two, (Pl. Br. at 13.), and that, this failure was not harmless error, as Plaintiff's ability to focus was directly at issue with regard to his disability determination, particularly, in light of the VE's statement at step five that an individual who is off-task 10% or more of the work day is precluded from competitive employment.  (*Id*. at 15.)   In that connection, Plaintiff points to Dr. Geller's consultative evaluation, which states that Plaintiff would be off-task 25% of a workday.  (Pl. Br. at 15-16; A.R. 441.)  In Plaintiff's view, had the ALJ properly considered Dr. Geller's evaluation, the ALJ would have found greater limitations in Plaintiff's RFC, and likely a finding of disabled. (Pl. Br. at 17.)

In support, Plaintiff cites *LaSalle v. Commissioner of Social Security*, an unpublished opinion which Plaintiff claims stands for the proposition that remand is proper whenever an ALJ fails to discuss significant medical evidence.  *LaSalle v. Commissioner of Social Security*, No. 10-01096, 2011 WL 1456166 (W.D. Pa. Apr. 14, 2011).  However, *LaSalle* is not on point here.  In *LaSalle*, the district court reversed and remanded the ALJ's decision because the ALJ failed, among other things, to consider a key consultative evaluation that found LaSalle to have bipolar II disorder and chronic post-traumatic stress disorder.  *Id*. at *4-5.  The ALJ also failed to consider, or even discuss, the evaluation's finding that these impairments, caused limitations in several key areas of functioning.  *Id*.  Further, the ALJ's two paragraph analysis did not expressly discuss the plaintiff's impairment in any specific manner.  *Id*. at *5.  For these reasons, the district court could

17

not determine if the consultative evaluation was considered in the ALJ's RFC analysis, and therefore, meaningful judicial review was not possible. *Id*.

Unlike in *LaSalle*, here, the failure to discuss ADHD at step two was not error since Plaintiff has failed to establish that his ADHD had any effect on his work-related abilities. Indeed, Plaintiff "has the burden of proof at Step Two," and therefore, on this appeal, the "failure to provide medical evidence that [ADHD] has more than a minimal affect on the ability to perform basic work activities" would render "meaningless the ALJ's failure to address it." *Desando v. Astrue*, No. 07-1823, 2009 WL 890940, at *5 (M.D. Pa. Mar. 31, 2009) (finding remand unnecessary because plaintiff failed to meet burden of proof that the ALJ's failure to consider fibromyalgia was more than harmless error); *Rodriguez v. Colvin*, No. 14-6461, 2017 WL 462630, at *6-7 ("Moreover, even if the ALJ erred by failing to consider all of Plaintiff's alleged medical impairments, Plaintiff has not demonstrated that any of these issues, either individually or collectively, inhibited his functioning in a manner that would have changed the ALJ's RFC assessment."); *see Jones v. Astrue*, No. 10-3226, 2011 WL 4478489, at *9 (D.N.J. Sept. 26, 2011) (finding ALJ's failure to consider plaintiff's cervical conditions harmless error because even if such a condition could be considered a severe impairment, the ALJ found other impairments to be severe and discussed the condition at step four).[1]   On this point, Plaintiff has failed to identify any medical evidence which would meet his burden of proving that his ADHD is a severe impairment, let alone show that the failure to consider his ADHD had more than a "minimal affect" on his ability to perform basic work activities.  In Plaintiff's brief, the only parts of the record he cites to

---

[1] The Third Circuit has held that so long as the ALJ finds that *any* of an applicant's impairments were severe, "even if [the ALJ] had erroneously concluded that some of [the applicant's] other impairments were non-severe, any error is harmless." *Salles v. Comm'r of Soc. Sec.*, 229 F. Appx. 140, 145 n.2 (3d Cir. 2007).

that explicitly discuss his ADHD are his records from Community Health Associates and the state medical consultant opinions, which merely state, without any discussion whatsoever, that he had, or had alleged, such an impairment.  (A.R. 63, 67, 76, 80, 92, 96, 101, 110, 106, 312, 314, 318, 319, 321.)   In fact, examining Plaintiff's record as a whole, there is scant discussion of Plaintiff's ADHD at all.   Moreover, to the extent Plaintiff argues that his ADHD had some affect on his ability to work simply because he was being treated by Dr. Geller since 2015, as far as the Court can determine, Dr. Geller's records do not expressly discuss Plaintiff's ADHD.  (*See* Pl. Br. at 14.) As such, the Court is left only with Plaintiff's conclusory assertions that had the ALJ considered his ADHD at step two, the ALJ would have ultimately found greater work limitations in Plaintiff's RFC, and "likely" a finding of disabled.  (*See* Pl. Br. at 17.)  This is insufficient for Plaintiff to meet his burden of proof.

As to Plaintiff's RFC, the ALJ's failure to explicitly identify Plaintiff's ADHD in that context is harmless error because, to the extent the ADHD would somehow impact Plaintiff's mental or physical limitations in his RFC, particularly as to concentration, persisting, and maintaining pace, the ALJ considered all of the relevant mental and physical limitations ADHD presumably would affect.  For example, the ALJ took Plaintiff's hearing testimony into account, such as Plaintiff's statement that he had trouble concentrating and "can only pay attention for 20 minutes."  (A.R. 16.)  The ALJ also considered Dr. Rajput's consultative exam, where Plaintiff refused to do serial sevens or answer concentration questions, but showed he was able to spell TABLE forward.  *Id*.  The ALJ further noted that across examinations, Plaintiff had normal concentration and was alert and oriented to person, place, and time.  *Id*.  Notably, the ALJ also considered the opinion of Plaintiff's mental health physician, Dr. Geller.  (A.R. 20; Pl. Reply Br. at 2.)  It is clear that the ALJ considered the limitations that could have resulted from Plaintiff's

ADHD, and therefore, failure to explicitly identify Plaintiff's ADHD in the ALJ's RFC determination was harmless error.

## B.  The ALJ Appropriately Considered the Relevant Medical Evidence

Plaintiff argues that the ALJ failed to consider and properly weigh the medical opinion evidence on the record, and as a result, the ALJ erred in determining Plaintiff's RFC.  (Pl. Br. at 17.)   First, Plaintiff disputes the ALJ's characterizations of the state medical consultants as unpersuasive, and asserts that the ALJ ignored their opinion as to Plaintiff's ability to work and maintain pace and persistence.  (*Id*. at 19.)  Second, Plaintiff takes issue with the ALJ's failure to explicitly discuss Dr. Rajput's examination and asses its value.  (*Id*.)  Third, Plaintiff argues that the ALJ inappropriately disregarded Dr. Geller's findings.  (*Id*.)  According to Plaintiff, "[h]ad these opinions been properly considered and incorporated into the RFC, Plaintiff would be unable to work based on the [VE]'s testimony[.]"  I disagree.

"[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  *Burnett v. Comm'r of Social Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see* 20 C.F.R. § 404.1545(a).  When a case is brought to an administrative hearing, the ALJ "is responsible for assessing [] residual functional capacity." 20 C.F.R. § 404.1546(c).  This means that the "ALJ— not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  Further, "[w]here the ALJ's findings of fact are supported by substantial evidence, [district courts] are bound by those findings, even if [the courts] would have decided the factual inquiry differently." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (internal quotation marks and citation omitted).

20

The ALJ appropriately considered the state medical consultant opinions.  Plaintiff argues that while the ALJ did consider certain portions of the medical consultant opinions, the ALJ failed "to account for the opinions the [state medical consultants offered] regarding [Plaintiff's] ability to complete a normal workday and maintain pace and persistence."  (Pl. Br. at 19.)   At its core, Plaintiff's argument is a disagreement over the results of the ALJ's review of the evidence.  But, here, on appeal, this Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993).  Rather, this Court may only consider whether the ALJ's conclusions were supported by substantial evidence, a highly deferential standard.   *McCrea*, 370 F.3d at 360 ("Although substantial evidence is more than a mere scintilla, it need not rise to the level of a preponderance.")  As to the state medical consultant opinions, ALJ's conclusions are supported by substantial evidence.  As an initial matter, the ALJ opinion actually finds the state consultant opinions unpersuasive because the record showed *greater* limitations than those found by the state consultants.  (A.R. 19.)  The ALJ notes that the agency consultants opined that Plaintiff could follow instructions, could sustain concentration, persistence, and pace, and relate and adapt in work-like settings.  (*Id*.)  The ALJ disagreed with this assessment, and found that the record "is consistent with greater limitations than opined at the initial and reconsideration levels."  (A.R. 19-20.)  The ALJ stated that Plaintiff's mental status record showed "anxious behavior, a blunted affect, and an anxious and irritable mood, as well as calm and cooperative behavior, normal recent and remote memory, normal concentration, and fait insight and judgment." (A.R. 20.)  In addition, Plaintiff's consultative evaluations, lifestyle, and subjective mental health complaints, all indicated that Plaintiff required a limitation to unskilled and low stress work, with additional limitations on social interaction and ability to fulfill quota-based work.  (*Id*.)  This analysis by the ALJ reflects a

searching review of the state consultant opinions, and the medical record in relation to those opinions.  Given this Court's reviewing standard, and that the "ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations," I find that the ALJ's consideration of the state consultant opinions was sufficient to substantially support the ALJ's RFC decision.  *Chandler*, 667 F.3d at 361.

Next, Plaintiff takes issue with the ALJ's failure to mention Dr. Rajput's consultative examination or explain how he weighed this evidence in connection with the RFC.  (Pl. Br. at 18.) In a seeming contradiction, Plaintiff admits that the ALJ does, indeed, cite to Dr. Rajput's opinion in his decision, but then, confusingly, argues that the ALJ failed to indicate whether Dr. Rajput's evaluation was even considered.  (*Id*.)  By the Court's count, the ALJ cites to Dr. Rajput's opinion nine times in the decision.  (A.R. 16, 18, 19, 20.)  These citations were cited exclusively during the step three and step four determinations.  (*Id*.)  Therefore, regardless of whether the ALJ explicitly used Dr. Rajput's name, it is clear from the opinion that the ALJ considered Dr. Rajput's opinion in making its RFC determination.

Plaintiff also argues that the ALJ's opinion was deficient because the opinion did not state exactly how Dr. Rajput's opinion was weighed.  Defendant disagrees, noting that the ALJ cited to Dr. Rajput's opinion on multiple occasions, and therefore considered these findings as part of the RFC assessment.  Further, Defendant notes that the ALJ stated that he "did not address evidence that was neither inherently valuable nor persuasive in accordance with 20 CFR § 404.1520b(c)." (A.R. 20.)  At step four, "[t]he ALJ must consider all relevant evidence when determining an individual's [RFC]."  *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001).  The findings should also be "comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so

that a reviewing court may know the basis for the decision." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Here, the ALJ's opinion sufficiently lays out the factual foundations for his conclusions. The opinion is detailed, and cites to where the ALJ considered Dr. Rajput's report, such that this Court, on review, can review the basis for the ALJ's decision. The Court finds that Dr. Rajput's opinion was appropriately considered in determining Plaintiff's RFC.

Finally, Plaintiff submits that the ALJ inappropriately "disregard[ed]" Dr. Geller's medical evaluation. (A.R. 19.) Once again, this appears to be a disagreement with the ultimate outcome, rather than whether the ALJ's RFC decision was based on substantial evidence. The ALJ first explained that Dr. Geller found:

> that the claimant had moderate limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing oneself; and a marked limitation in concentration, persistence, and pace. Dr. Geller also opined that the claimant had minimal capacity to adapt to changes in his environment and that he would be off task 25% or more of the time.

(A.R. 20.) The ALJ found this evaluation unpersuasive. (*Id.*) First, the ALJ stated that the "degree of limitation opined in the [Plaintiff's] ability to concentrate and persist is not well supported by Dr. Geller's vague reference to panic attacks and anxiety." (*Id.*) The ALJ also noted that Plaintiff's treatment notes consistently showed that Plaintiff denied sleep difficulty, anxiety, depression, and memory difficulty. (*Id.*) Further, the ALJ explained that Plaintiff's mental status examinations generally showed non-cooperative behavior, appropriate affect, fair insight, and judgment. (*Id.*) The ALJ concluded that while the record was "consistent with moderate limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing oneself, it is not consistent with the degree of limitation opined in the [Plaintiff's] ability to concentrate and persist, adapt to changes in his environment, or stay on task[.]" (*Id.*) As stated *supra*, the ALJ is responsible for RFC decisions, not treating physicians. *Chandler*, 667 F.3d at

361.  Here, and in light of my deferential role in reviewing the ALJ's decision, I find the ALJ has supported his conclusions as to Dr. Geller's evaluation by relying on substantial evidence.

Therefore, in sum, substantial evidence supports the ALJ's overall RFC determination. Plaintiff's appeal is, for the most part, a request to reweigh the evidence, which this Court cannot do under the applicable standards.  Accordingly, the ALJ did not err in his RFC decision.

### C.  Statements of Carolyn Rothlisberger

Next, Plaintiff argues that the ALJ failed to appropriately consider two third-party written statements from Carolyn Rothlisberger, a former co-worker of Plaintiff, that are part of the administrative record.  (Pl. Br. at 21; *see* A.R. 303-04.)  Plaintiff asserts that the ALJ's failure to explain whether Ms. Rothlisberger's statements were considered is a basis for remand.  (*Id.*)  In this respect, Defendant argues that Ms. Rothlisberger's statements are similar to those made by Plaintiff, which the ALJ discussed throughout the decision.  (Def. Br. at 13.)  As such, Defendant maintains that remand would not change the outcome of the case, and for that reason, remand is not required.  I agree.

Similar to medical evidence, the ALJ "must consider and weigh all of the non-medical evidence before him."  *Burnett*, 220 F.3d at 122.  "Although allegations of pain and other subjective symptoms must be consistent with the objective medical evidence, the ALJ must still explain why he is rejecting the testimony."  *Id.* (internal citation omitted).  "Nevertheless, [i]n many cases, courts have found that an ALJ's failure to address lay opinion testimony, although technically a violation of applicable legal standards, did not require remand since the testimony would not have changed the outcome."  *Privette-James v. Colvin*, No. 12-610, 2015 WL 4743769, at *2 (E.D. Pa. Aug. 11, 2015) (quoting *Butterfield v. Astrue*, No. 06-0603, 2011 WL 1740121, at *6 (E.D. Pa. May 5, 2011)) (finding plaintiff's husband's letter to be cumulative and merely

reiterates information ALJ expressly considered on the record, and therefore, determining failure to consider the letter to be harmless error); *see Rutherford*, 399 F.3d at 553 (refusing to remand case when ALJ indirectly considered plaintiff's obesity and direct consideration would not have changed the outcome); *Perkins v. Barnhart*, 79 Fed. Appx. 512, 515 (3d Cir. 2003) (finding failure to consider combination of depression and asthma on plaintiff's ability to perform substantial gainful employment harmless error because express consideration would have had no effect on ALJ's decision).

Although it appears that the ALJ did not specify whether he considered Carolyn Rothlisberger's non-medical statements, the statements, themselves, are cumulative of issues expressly considered in the ALJ's opinion. Ms. Rothlisberger's letter, (A.R. 303), describes Plaintiff's panic attacks in narrative detail, including panic attacks she witnessed as his co-worker and prior to entering a movie theater. (A.R. 303-04.) Further, she states that cars can trigger panic attacks, particularly noting Plaintiff's issue with being on highways. (*Id*.) Ms. Rothlisberger also filled out a third-party function report for the Social Security Administration. (A.R. 235.) In that report, Ms. Rothlisberger described Plaintiff's daily activities, his sleep patterns, personal care issues, his ability to feed himself and do chores, how often he leaves the home, his social activities, and details about his mental abilities. (A.R. 235-242.) Although Ms. Rothlisberger's statements are undoubtedly illustrative of Plaintiff's impairments, the topics discussed are cumulative and reiterate evidence discussed by the ALJ. In the opinion, the ALJ expressly examined Plaintiff's sleep issues in relation to his anxiety, (A.R. 18), his ability to prepare canned or frozen meals and inability to do chores, (A.R. 16), Plaintiff's inability to leave the house for days and need to isolate himself even when home, (A.R. 16, 18), his inability to socialize with people in groups, but ability to speak to a few particular people, (A.R. 16), the triggers of Plaintiff's panic attacks, including

25

while he is in cars, with crowds of four or more people, hears police sirens, or is exposed to bright lights, (A.R. 18, 19, 20), and the effects of those panic attacks, (*Id.*)  Moreover, considering that the ALJ found Plaintiff's statements as to intensity, persistence, and limiting effects of his impairment symptoms to be inconsistent with the medical evidence, inclusion of Ms. Rothlisberger's statements would not have changed those findings.  *Privette-James*, 2015 WL 4743769, at *2 ("Moreover, this letter would not have changed the ALJ's finding that Plaintiff's 'subjective complaints are less than fully credible,' as the ALJ based this conclusion on his assessment that 'the objective medical evidence does not support the alleged severity of symptoms.'").  Therefore, the ALJ's failure to consider the testimony of Ms. Rothlisberger was harmless error and does not require remand.

### D.  Substantial Evidence Supports the ALJ's Determination at Step Five

Finally, Plaintiff lists the DOT job requirements for the jobs the ALJ found Plaintiff could perform, namely, bagger, assembler, and produce weigher, and argues that these requirements are incongruous with the limitations found in Plaintiff's RFC in that they are production-based jobs that require interaction with the general public, none of which Plaintiff can perform.  (Pl. Br. at 22-23.)  I find, however, that the ALJ's step five finding was based on substantial evidence.

As stated *supra*, the ALJ determined:

> that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently climb, balance, stoop, kneel, crouch, and crawl. The claimant can have frequent exposure to hazards such as unprotected heights and moving machinery. The claimant can perform unskilled work involving routine and repetitive tasks. The claimant can perform low stress work, defined as occasional changes in work setting and occasional independent decision-making. The claimant can perform no quota or production-based work, but rather goal-oriented work. The claimant can have occasional interaction with coworkers and supervisors, and no interaction with members of the public.

(A.R. 17.)  At Plaintiff's hearing, the ALJ asked the VE the following hypothetical question, which encompassed such an RFC:

> Please assume a hypothetical individual of Mr. Marano's age, education, and past relevant work experience who has the following residual functional capacity.  Light work, frequent climbing, balancing, stooping, kneeling, crouching, and crawling.  Frequent exposure to hazards such as unprotected heights and moving machinery.  Please further assume that the individual could perform unskilled work involving routine and repetitive tasks with low stress, which I will define as occasional changes in the work setting and occasional independent decision making.  Please also assume that the individual could perform work that involves no quota or production-paced work, but rather goal-oriented work.  Occasional interaction with coworkers and supervisors, but no interaction with members of the public.  All right, could the hypothetical individual perform Mr. Marano's past relevant work?

(A.R. 57.)  Given this hypothetical, the VE found that Plaintiff could perform the occupations of bagger, assembler, and produce weigher, but with a 50% decrease in assembler positions available to Plaintiff to account for jobs that could be production-based jobs.  (A.R. 57-59.)

Here, the ALJ's determination was supported by substantial evidence.  "A hypothetical question posed to a vocational expert must reflect *all* of a claimant's impairments."  *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (internal quotations and citation omitted).  The ALJ's hypothetical, indeed, reflected all of the RFC limitations, which was developed based on Plaintiff's impairments.  In the ALJ's hypothetical, he specifically provides that Plaintiff can perform no quota or production-based work.  (A.R. 17.)  In response, the VE found Plaintiff could perform the jobs of bagger, assembler, and produce weigher, but given Plaintiff's specific limitation in quota or production-based work, the VE reduced the work of assembler by 50%.  (A.R. 57-59.)  As Defendant points out, the DOT "lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings."  (Def. Br. at 15.); *see* Social Security Ruling (SSR) 00-4p, 65 Fed. Reg. 75759,75760 (*Tiles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable*

*Occupational Information in Disability Decisions*). Thus, the DOT does not express the full range of work available to Plaintiff, and for that reason, the descriptions cited by Plaintiff as proof of his inability to perform these jobs is off-base.

In view of this, the ALJ appropriately expressed Plaintiff's limitations in the hypothetical, and the VE answered the hypothetical with those limitations in mind, as is shown by the VE's decision to reduce the assembler work available to Plaintiff by 50%, and appropriately considered the DOT.  (A.R. 57.)  *Plummer*, 186 F.3d at 431 ("This hypothetical encompasses all the limitations which the ALJ found were suffered by the claimant. The vocational expert's testimony was in response to a hypothetical that fairly set forth every credible limitation established by the physical evidence. As such, it can be relied upon as substantial evidence supporting the ALJ's conclusion that Plummer is not totally disabled.").  Based on the VE's answer, as well as Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff was not disabled.   (A.R. 22.)  As such, the ALJ's decision was supported by substantial evidence.

IV.    <u>**CONCLUSION**</u>

For the reasons set forth above, the ALJ's decision is **AFFIRMED**.  An appropriate Order shall follow.


Date:   December 20, 2021                               <u>/s/ Freda L. Wolfson</u>
                                                         Freda L. Wolfson
                                                         U.S. Chief District Judge